IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

YVES SANTAIS,

        Plaintiff,

    v.

CORRECTIONS CORPORATION OF
AMERICA, et al.,

        Defendants.

CIVIL ACTION NO.: 5:16-cv-80

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Coffee Correctional Facility in Nicholls, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) I have conducted the requisite frivolity review of this Complaint. For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendants Corrections Corporation of America, ("CCA"), Coffee Correctional Facility, and Warden Hilton Hall. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for compensatory and punitive damages and deliberate indifference claims. I further **RECOMMEND** that the Court **DENY** Plaintiff's Motion for Preliminary Injunction, (doc. 14). The Court **DENIES** Plaintiff's Motion for Production, (doc. 12), and Plaintiff's Motion to Appoint a Translator, (doc. 13).

However, Plaintiff has stated a viable Eighth Amendment excessive force claim and state law claims against Defendant Jones, and those claims shall proceed. Consequently, the Court hereby **ORDERS** that the Complaint and this Order be served on Defendant Jones. The Court provides additional instructions to Plaintiff and Defendant Jones pertaining to the future litigation of this action, which the parties are urged to read and follow.

# BACKGROUND[1]

Plaintiff alleges that Defendant Officer Jones discharged "gaz" spray in the cafeteria of Coffee Correctional Facility and then blocked over 25 prisoners, including Plaintiff, from exiting the cafeteria. (Doc. 1, p. 6.) Plaintiff alleges that, as a result of his exposure to "gaz" spray, his immune system was "impacted", and he suffered chest pain and coughed up blood. (Id.) After Plaintiff's symptoms manifested, a prison nurse examined Plaintiff and immediately treated him. (Id.)

Plaintiff contends that Defendant Officer Jones "engaged in excessive force, misconduct and authority abuse against inmates" and that Defendant Warden Hall failed to investigate the alleged incident after Plaintiff filed an administrative grievance. (Id. at p. 8.)

# STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

---

[1] The Court takes the following facts from Plaintiff's Complaint and accepts them as true, as it must at this stage.

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>Thompson v. Rundle</u>, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. <u>Twombly</u>, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Bilal</u>, 251 F.3d at 1349 (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys, and therefore, must be liberally construed. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent

standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Claims against Corrections Corporation of America

Plaintiff names Corrections Corporation of America, ("CCA"), as a Defendant, apparently due to its role as employer of the other named Defendants. Though CCA is a private entity, prison contractors are considered state actors. Therefore, CCA is subject to suit under Section 1983. See Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). However, supervisors, employers, and private contractors cannot be sued under Section 1983 simply on a theory of *respondeat superior.* Nesmith v. Corr. Corp. of Am., Civil Action No. CV507-043, 2007 WL 2453584, at *2 (S.D. Ga. Aug. 23, 2007) (holding that CCA, as private contractor who runs prison, cannot be held liable under Section 1983 on *respondeat superior* or vicarious liability basis). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the Constitution." Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold an employer such as CCA liable, Plaintiff must demonstrate that either: (1) CCA actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of CCA and the alleged constitutional violation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege

that Defendant CCA actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a causal connection between Defendant CCA and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). Furthermore, Plaintiff has not alleged that CCA implemented an improper custom or policy, directed its subordinates to act unlawfully, or knew they would act unlawfully and failed to stop them from doing so. Thus, Plaintiff has failed to allege any facts that would result in liability for CCA, and the Court should **DISMISS** Plaintiff's claims against CCA.

## II.     Dismissal of Claims against Coffee Correctional Facility

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. While local governments qualify as "persons" under Section 1983, state agencies and penal institutions are generally not considered legal entities subject to suit. See Grech v. Clayton Cty., 335 F.3d 1326, 1343 (11th Cir. 2003). Consequently, a prison is not a viable defendant under Section 1983. Williams v. Chatham Cty. Sherriff's Complex, Case No. 4:07-cv-68, 2007 WL 2345243 (S.D. Ga. Aug. 14, 2007) ("The county jail, however, has no independent legal identity and therefore is not an entity that is subject to suit under Section 1983."). Accordingly, the Court should **DISMISS** Plaintiff's claims against Coffee Correctional Facility.

### III.     Dismissal of Supervisory Liability Claims against Defendant Hall

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations.  Id. at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."  Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendant Hall liable based solely on his supervisory position at Coffee Correctional Facility.  He does not make any factual allegations that Defendant Hall directly participated in or was otherwise causally connected to the alleged deprivation of his constitutional rights.  For example, he states that Defendant Hall is "legally responsible for the operation of [the prison] . . . [and] the protection and welfare of all inmates of that prison."  (Doc. 1, p. 8.)  As set forth above, such supervisory allegations are an insufficient basis for Section 1983 liability.  Therefore, the Court should **DISMISS** Plaintiff's claims against Defendant Hall.

## IV.     Dismissal of Claims for Compensatory and Punitive Damages

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated.  Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury."  Id. (internal citations omitted) (alterations in original).  Consequently, a prisoner that has not suffered more than *de minimis* physical injury cannot recover compensatory or punitive damages.  Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages.  It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated*

*on other grounds by* <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312–13 (11th Cir.2002). "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear." <u>Chatham v. Adcock</u>, 334 F. App'x 281, 284 (11th Cir. 2009).

In this case, Plaintiff has only alleged *de minimis* physical injury resulting from Defendants' alleged excessive use of force. Plaintiff claims that Defendant Jones sprayed him (presumably with pepper spray). However, he states only that he suffered a sore throat and pain in his lungs, that he coughed up blood twice, and that the pepper spray had an "impact" on his immune system. (Doc. 1, p. 6.) Several courts have held that the typical effects associated with pepper spray, such as temporary burning of the skin and difficulty breathing, are not sufficient to satisfy Section 1997(e)'s physical injury requirement. <u>See, e.g.</u>, <u>Jennings v. Mitchell</u>, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy § 1997e(e)); <u>Kirkland v. Everglades Corr. Inst.</u>, No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014) ("If [plaintiff] experienced temporary chemical burns and minor respiratory problems from exposure to a chemical agent, he then sustained only minor, physical injuries from the chemical spray."); <u>Magwood v. Tucker</u>, No. 3:12cv140/RV/CJK, 2012 WL 5944686, at *5 (N.D. Fla. Nov. 14, 2012) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered bloody nose and bloody phlegm); <u>Kornagay v. Burt</u>, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of

chemical agent where prisoner alleged he suffered burning lungs and skin, congested breathing, tearing eyes, nasal discharge, dizziness, the sensation of respiratory distress, choking, and burns to his scalp); Beecher v. Jones, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *5–6 (N.D. Fla. Oct. 29, 2010) (prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under § 1997e(e)); see also Osterback v. Ingram, No. 3:96cv580/LAC/SMN, 2000 WL 297840, at *10 (N.D. Fla. Jan.12, 2000) (plaintiff unable to recover compensatory or punitive damages with respect to injuries caused by placement in disciplinary confinement or close management, pursuant to § 1997e(e)), where plaintiff's physical injuries, including "extreme pain and suffering from being exposed to residual chemical fumes" which caused him to suffer a "serious, debilitating sinus condition," and "overall loss of muscle tone, a gaining of body fat, a loss of cardiovascular and pulmonary health, developed skin and scalp conditions, . . . migraine headaches, bouts of sleeplessness and listless[ness], among other things," were not more than *de minimis*).

In this case, Plaintiff does not describe any lasting effects of his exposure to pepper spray such as continued pain, and the only treatment he describes is a nurse's order that he drink water and take his blood pressure medication. (Doc. 1, p. 7.) Because Plaintiff has failed to allege that Defendant Jones' actions caused more than a *de minimis* injury, the Court should **DISMISS** his claims for compensatory and punitive damages.

## V. Dismissal of Deliberate Indifference to Medical Needs Claims

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and

unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347. However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference to medical care claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

In his Complaint, Plaintiff alleges that, after Defendant Jones exposed him to spray fumes, Plaintiff experienced chest pain and coughed up blood. Because a lay person could easily recognize the necessity for medical attention based upon those conditions, Plaintiff has arguably shown that he had a serious medical need. (Doc. 1, p. 6.) However, Plaintiff does not allege that any named Defendant knew that he suffered chest pain or coughed up blood. Accordingly, Plaintiff has not shown that any Defendant had subjective knowledge of a risk of serious harm, and his claim should fail on that basis.

Moreover, even assuming, *arguendo*, that Defendants had knowledge of a risk of serious harm to Plaintiff's health as a result of his exposure to "gaz" spray, Plaintiff has not shown that the risk to his health was disregarded. Plaintiff concedes that a nurse on duty examined him, checked his blood pressure, gave him water and medication, and scheduled an appointment for Plaintiff to see a doctor. Plaintiff's contention that he should have been seen by a doctor in addition to a nurse falls far short of approaching the standard required for deliberate indifference to serious medical needs. See Goebert, 510 F.3d at 1326; see also Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) ("'[A]ccidental inadequacy, negligence in diagnosis or treatment, [and] medical malpractice'" are insufficient to sustain a claim of deliberate indifference[.]). Accordingly, for all these reasons, Plaintiff fails to state a cognizable federal

claim for denial of medical care. The Court should, therefore, **DISMISS** Plaintiff's Eighth Amendment deliberate indifference claims.

## VI.     Excessive Force Claims

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff has made sufficient allegations to state a plausible claim that Defendant Jones used excessive force against him on the date of the incident. He alleges that Defendant Jones confined Plaintiff in the cafeteria after spraying that room with "gaz" spray, and that Defendant Jones did so without any provocation or other reason. This claim survives frivolity review.

## VII.    State Law Claims

Plaintiff has arguably asserted pendent state claims of battery, false imprisonment, and intentional infliction of emotional distress against Defendant Jones.

28 U.S.C. § 1367(a) provides a federal court with supplemental jurisdiction over claims that are so related to a plaintiff's federal claims that they form part of the same case or controversy. "The Constitutional 'case or controversy' standard confers supplemental jurisdiction over all state law claims which arise out of a common nucleus of operative fact." Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 724–25 (1966)). A District Court can decline to exercise supplemental jurisdiction over a pendent state claim under 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of state law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"In determining whether [dismissal] is appropriate under any of these four categories the Court must make a case specific analysis and consider factors including judicial economy, convenience, fairness to litigants, and comity. Gibbs, 383 U.S. at 726.

In a proceeding before a district court upon a federal cause of action, the court has substantial discretion in determining whether to exercise supplemental jurisdiction over pendent state-law claims. 28 U.S.C. § 1367; Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam). This discretion survives even where all federal claims are dismissed. Raney, 370 F.3d at 1088–89; see also Palmer v. Hosp. Auth., 22 F.3d 1559, 1567–68 (11th Cir. 1994). Ordinarily, when all federal claims are eliminated before trial, the district court

should decline to exercise jurisdiction over the remaining state-law claims.  Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988).  Nevertheless, the decision ultimately rests within the district court's discretion, to be guided by considerations of judicial economy, fairness, comity, and convenience.  Id.; see also Casey v. City of Miami Beach, 805 F. Supp. 2d 1361, 1362 (S.D. Fla. 2011) (declining to remand where factors favored retention of jurisdiction though federal claims were dismissed).

This Court frequently adjudicates state law claims of battery, false imprisonment and intentional infliction of emotional distress, and none of those claims raise novel or complex issues.  Furthermore, none of these claims substantially predominate over Plaintiff's remaining federal claim.  Moreover, not all federal claims have been dismissed as Plaintiff's federal claim against Defendant Jones remains before the Court.  Finally, the convenience and fairness to the litigants of addressing the claims in this forum outweigh any concerns of comity.  Therefore, the Court exercises its discretion to maintain jurisdiction over Plaintiffs' state law claims of battery, false imprisonment, and intentional infliction of emotional distress against Defendant Jones, and those claims shall proceed.

**VIII.  Plaintiff's Motion for a Preliminary and Permanent Injunction (Doc. 14)**

In his Motion for a Preliminary Injunction, Plaintiff requests that the Court demote Defendant Jones from the rank of Captain and bar him from interacting with inmates.  (Doc. 14, p. 1.)  Plaintiff also requests that the Court order Defendant Jones to undergo a psychological evaluation.  To be entitled to a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of ultimate success on the merits; (2) that a restraining order or injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the restraining order or injunction would inflict on the other

party; and (4) that the restraining order or injunction would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Similarly, a plaintiff requesting a permanent injunction must satisfy the following four-factor test:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Thus, "[t]he standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." Siegel v. LePore, 234 F.3d 1163, 1213 (11th Cir. 2000) (Carnes, J., dissenting). In either case, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. State of Ala., 683 F.2d 1312, 1319 (11th Cir. 1982). Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to

prison authorities is especially appropriate." Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to a preliminary or permanent injunction. Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims. Moreover, Plaintiff has not demonstrated that he faces a threat of future injury or that his requested relief as to Defendant Jones is necessary to prevent such an injury. Therefore, the Court should **DENY** his request for a preliminary injunction.

## IX.     Motion for Production, (doc. 12), and Motion to Appoint a Translator, (doc. 13)

Plaintiff requests that the Court order Defendants to produce surveillance camera footage of the cafeteria, Plaintiff's medical records, and all other materials relevant to his claims. (Doc. 12, pp. 1–2.) This action is only now being subjected to frivolity review, and none of the Defendants named in Plaintiff's Complaint have been served. For this reason, Plaintiff's Motion is premature, and the Court **DENIES** this Motion (doc. 12). However, upon service of his Complaint, Plaintiff may request a copy of these materials from Defendant through discovery. Plaintiff is instructed to read and follow the Court's below instructions regarding discovery.

Finally, Plaintiff requests that the Court appoint a translator to translate from English to French or French-Creole, as he has "a language barrier and a strong accent" and has only "learned broken English during his confinement." (Doc. 13.) However, Plaintiff provides no legal basis for his translator request. "Although plaintiff was granted *in forma pauperis* status, 'there is no specific statute which authorizes the court to appoint an interpreter in civil *in forma pauperis* actions.'" Velez v. Burge, No. 08-CV-00806(M), 2009 WL 3459744, at *2 (W.D.N.Y.

Oct. 20, 2009) (quoting <u>Mendoza v. Blodgett</u>, No. C-89-770-JMH, 1990 WL 263527, at *15 (E.D. Wash. Dec. 21, 1990)). Moreover, "'pro se civil litigants have no entitlement to an interpreter or translator.'" <u>Id.</u> (quoting <u>Fessehazion v. Hudson Grp.</u>, No. 08 CIV.10665 BSJ RLE, 2009 WL 2596619, at *2 (S.D.N.Y. Aug. 21, 2009)). Finally, Plaintiff's filings and communications with the Court thus far indicate no difficulty proceeding in English. Accordingly, the Court **DENIES** his Motion for appointment of a translator (doc. 13).

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendants Corrections Corporation of America, ("CCA"), Coffee Correctional Facility, and Warden Hilton Hall. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for compensatory and punitive damages and deliberate indifference claims. I further **RECOMMEND** that the Court **DENY** Plaintiff's requests for injunctive relief. The Court **DENIES** Plaintiff's Motion for Production, (doc. 12), and Plaintiff's Motion to Appoint a Translator, (doc. 13).

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANT

Plaintiff's allegations in his Complaint arguably state colorable claims for relief under 42 U.S.C. § 1983 for an excessive use of force Defendant Jones. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendant Jones by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANT

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that the United States Marshal effect service. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service

unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).

Generally, a defendant who timely returns the waiver is not required to answer the complaint

until sixty (60) days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P.

4(d)(3).

**IT IS FURTHER ORDERED** that Defendant is hereby granted leave of court to take

the deposition of the Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a).  Defendant is further

advised that the Court's standard 140 day discovery period will commence upon the filing of the

last answer.  Local Rule 26.1.  Defendant shall ensure that all discovery, including the Plaintiff's

deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendant takes the deposition of any other person, Defendant is ordered

to comply with the requirements of Federal Rule of Civil Procedure 30.  As the Plaintiff will

likely not be in attendance for such a deposition, Defendant shall notify Plaintiff of the

deposition and advise him that he may serve on Defendant, in a sealed envelope, within ten (10)

days of the notice of deposition, written questions the Plaintiff wishes to propound to the

witness, if any.  Defendant shall present such questions to the witness seriatim during the

deposition.  Fed. R. Civ. P. 30(c).

### INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant or, if

appearance has been entered by counsel, upon his attorney, a copy of every further pleading or

other document submitted for consideration by the Court.  Plaintiff shall include with the original

paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct

copy of any document was mailed to Defendant or his counsel.  Fed. R. Civ. P. 5.  "Every

pleading shall contain a caption setting forth the name of the court, the title of the action, [and]

the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendant, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has

contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendant. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING
## MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution and failure to follow the court's orders if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendant's affidavits will be accepted as true and summary judgment may

be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of January, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA