IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| YVES SANTAIS, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER JONES, <br><br> Defendant. | CIVIL ACTION NO.: 5:16-cv-80 |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff filed this 42 U.S.C. § 1983 cause of action to contest Defendant's alleged use of excessive force at Coffee Correctional Facility in Nicholls, Georgia. (Doc. 1.) Presently before the Court is Defendant's Motion for Summary Judgment. (Doc. 28.) Plaintiff filed Responses, (docs. 30, 37), to which Defendant did not Reply. For the reasons set forth below, I **RECOMMEND** that the Court **DENY** Defendant's Motion for Summary Judgment.

**BACKGROUND**[1]

This case concerns Defendant's alleged use of excessive force against Plaintiff by discharging CS spray[2] in the cafeteria of Coffee Correctional Facility on April 7, 2016, at 5:32 p.m. (Doc. 30-2, p. 1.) At frivolity review I found Plaintiff to have stated plausible Eighth

---

[1] The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016). The Court recognizes that Defendant's version of events differs from Plaintiff's in several critical areas. For example, Defendant states that he did not discharge CS spray at all while Plaintiff avers Defendant sprayed it in the cafeteria, injuring Plaintiff in the process. (Compare Doc. 28, p. 14–15, with Doc. 30-2, p. 1–2.) These material factual disputes are matters for a jury to decide.

[2] Plaintiff refers to this substance as "gaz spray," (doc. 30-2, p. 1), while Defendant refers to it as "CS spray," (doc. 28, p. 15.) Although the Court previously refereed to this substance as "pepper spray," (doc. 20, p. 8), for consistency and precision, the Court will employ Defendant's terminology throughout.

Amendment excessive force and state law claims against Defendant, but I denied Plaintiff's claims for compensatory and punitive damages, finding him to have alleged only *de minimis* injuries stemming from Defendant's alleged use of CS spray. (Doc. 20, p. 7–9, 12.) However, the Court sustained in part Plaintiff's Objections, (doc. 25), and reinstated his claim for compensatory and punitive damages, (doc. 27, p. 5).[3] In the Order amending and adopting my Report and Recommendation as the opinion of the Court, District Judge Lisa Godbey Wood found that Plaintiff's Objections alleged "far more significant injuries than in his original Complaint," including an abnormality on the left side of his face, coughing up blood, and long lasting symptoms from the CS spray. (Id. at pp. 3–5.)

The excessive force at issue occurred when Defendant discharged CS spray in the cafeteria without provocation. (Doc. 30-2, pp. 1–2.) The cafeteria is approximately 2000 square feet and contained four staff members when the use of force occurred: Sergeant James Johnson was near the drink containers; Sergeant Kasonya Johnson, Defendant's niece, was near a window passing out food trays; Officer Carnegay was running the scanner; and Defendant Jones was three or four tables away from Plaintiff. (Id.) Defendant took Kasonya Johnson's CS spray, discharged it into the cafeteria, and then briefly locked Plaintiff along with twenty-five other inmates in the contaminated cafeteria until Johnson opened the back door to allow them to leave. (Id.) As a result, Plaintiff suffered immediate physical injuries—an impacted immune system, severe throat pain, lung and chest pain, and coughing blood—which medical treated the same day. (Id. at pp. 2–3; Doc. 25, p. 4.) Plaintiff continues to cough up blood, has now developed an

---

[3] Defendant's Motion for Summary Judgment clearly does not account for the Court's Adoption Order. In his Motion, Defendant proceeds with the understanding that the Court "foreclosed" Plaintiff's damages claims, (doc. 28, p. 2), despite the exact opposite being true. Likewise, Defendant erroneously asserts as an undisputed fact his contention that he never used CS spray, (id.), despite Plaintiff's affidavit to the contrary, (doc. 30-2). These critical mistakes of the record notwithstanding, Defendant's Motion is due to be denied in light of the genuine disputes of material fact that remain.

abnormality on the left side of his face, and has since been seen by medical again.  (Doc. 25, pp. 4–5; Doc. 30-2, pp. 2–3.)

Defendant posits a wholly different set of facts.  Defendant contends the use of CS spray occurred in the hallway outside the cafeteria and was discharged, not by him, but by Officers Kasonya Johnson and Kristopher Anguiano.  (Doc. 28, p. 5.)  Further, the CS spray was discharged on inmate Hicks, not Plaintiff.  (Id.)  The altercation between Defendant and inmate Hicks began when Hicks walked out of the cafeteria and into the hallway with a second tray of food and refused Defendant's orders.  (Id. at pp. 14–15.)  When Defendant called for backup, Officers Johnson and Anguiano arrived and eventually sprayed inmate Hicks with CS after he threw his food tray and continued to disobey orders.  (Id.)  Defendant argues this entire event occurred in the hallway, not the cafeteria, and that Plaintiff could not have been harmed because "CS spray is a topical agent . . . that did not reach the inside of the chow hall."  (Id.)  Thus, according to Defendant, Plaintiff's version of events "simply did not happen."  (Id.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## DISCUSSION

Defendant sets forth several grounds for summary judgment in his Motion. First, Defendant asserts Plaintiff is not entitled to injunctive relief on his excessive force claim because the facts show Plaintiff was not present where the CS spray was discharged and Defendant did not discharge it. (Id. at pp. 6–7.) Second, Defendant asserts Plaintiff is not entitled to injunctive relief on his state law battery claim because no offensive touching occurred, even assuming Plaintiff's version of events is true. (Id. at pp. 7–8.) Similarly, Defendant argues Plaintiff's false imprisonment claim fails because he was not arrested, and Plaintiff's intentional infliction of emotional distress claim fails because Defendant did nothing toward Plaintiff. (Id. at pp. 8–9.)

Finally, Defendant contends Plaintiff has not met the standard for injunctive relief in the prison context because "nothing approaching this set of facts has ever occurred." (Id. at p. 10.)

In Response, Plaintiff contends Defendant has conspired with witnesses Johnson and Anguiano to "concoct" an untrue story. (Doc. 30-1, p. 5.) Plaintiff states inmates David Hicks and Jassen Reynold are credible witnesses that can corroborate his version of events, but he has been unable to access them for discovery. (Doc. 30.) Additionally, Plaintiff argues video surveillance from the cafeteria on the date in question will prove his version true. (Doc. 30-1, p. 2, 3.) Although both parties have provided competing affidavits, neither has provided the Court with any other evidence, whether it be surveillance video, medical records, incident reports, or otherwise.

## I.   Eighth Amendment Claim

Plaintiff's excessive force claim and Defendant's Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force was used "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following

5

factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

In this case and at this stage, there are too many controverted material facts for the Court to find that Defendant did not use excessive force against Plaintiff. As detailed above, Plaintiff and Defendant posit entirely different versions of the events in question. Defendant claims he never discharged CS spray and that the use of CS spray by other officers on April 7, 2016, took place in the hallway outside the cafeteria rather than in the cafeteria where Plaintiff was located. (Doc. 28, p. 14–15.) Defendant argues the use of CS spray on inmate Hicks did not reach Plaintiff inside the cafeteria. (Id.) Plaintiff disputes Defendant's story at every point. Plaintiff contends Defendant indiscriminately discharged CS spray in the cafeteria and then forced him and other inmates to remain inside the contaminated cafeteria. (Doc. 30-2, p. 1.) Plaintiff further contends that Defendant's use of CS spray in the cafeteria caused him physical harm requiring multiple visits to medical. (Id. at pp. 2–3; Doc. 30-1, pp. 1–2.) Further, Plaintiff avers Defendant used witness Johnson's CS spray in the cafeteria while Defendant avers witness Johnson, along with witness Anguiano, used their own CS spray on inmate Hicks in the hallway. (Doc. 30-2, p. 2; Doc. 28. pp. 15, 16–18.)

At this stage, it is not the Court's role to judge the credibility of Plaintiff's account versus Defendant's account. Rather, "the Court must adopt [Plaintiff's] version of the incident for purposes of summary judgment." Thwaites v. Wimbush, No. 5:11-CV-195 (CAR), 2013 WL 1333723, at *4 (M.D. Ga. Mar. 29, 2013). The only evidence before the Court, each party's

6

competing and uncorroborated affidavits, is not sufficient for the Court to rule in favor of the moving party. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010) (summary judgment inappropriate where the evidence presents a question of "he said, she said," and the plaintiff's testimony is "not contradictory or rife with inconsistencies such that it [is] facially implausible"). As the Court of Appeals for the Eleventh Circuit recently held, a "non-conclusory affidavit which complies with [Federal Rule of Civil Procedure] 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." United States v. Stein, 881 F.3d 853, 858–59 (11th Cir. 2018).[4] The self-serving affidavits provided in this case establish just that: genuine disputes of material facts.

The Court includes a full analysis of the incident below. However, put succinctly, factual disputes between Plaintiff's version of this incident and Defendant's account permeate the factors that the Court takes into consideration when weighing an allegation of excessive force. Defendant has not offered objective evidence that blatantly contradicts Plaintiff's version of events and has failed to show that no genuine dispute of material fact exists. As such, Defendant's Motion is due to be denied.

The Court now assesses the determinative factors as to the incident of Defendant's use of excessive force against Plaintiff.

### A. The Need for the Exercise of Force

Defendant argues that he did not use any force as to Plaintiff and that the need to use force arose in response to insubordination from inmate Hicks. (Doc. 28, p. 14–15.) Plaintiff disputes this basis entirely, arguing that Defendant discharged CS spray in the cafeteria without reason while he was sitting quietly in the cafeteria. (Doc. 30-2, pp. 1, 3.) In response to

---

[4] As the Honorable William Pryor noted in his concurrence, the right to a jury trial was paramount in the founding of the United States and precluding such simply because an affidavit is self-serving "oust[s] the jury from its historical role." United States v. Stein, 881 F.3d 853, 859–60 (11th Cir. 2018).

Defendant's alleged reason to use force on inmate Hicks, Plaintiff pointedly remarks "[i]t's not true, and nobody will believe such stories." (Doc. 30-1, p. 2–3.) Therefore, Plaintiff contends that Defendant discharged CS spray in the cafeteria without sufficient justification. Construing these factual disputes in favor of Plaintiff, as the Court must at this stage, the jury could find that Plaintiff exhibited no reason for Defendant to discharge CS spray in his presence, and, therefore, that there was no need for Defendant to do so.

### B. The Relationship Between the Need for the Use of Force and the Amount Applied

There also are factual disputes as to the relationship between the need for the use of force and the amount of force applied by Defendant. Again, the issue of the need for the use of force is unresolved due to the differences in Defendant's and Plaintiff's accounts of what occurred in the cafeteria. While Defendant maintains that he used no force on Plaintiff and that the altercation that day involved inmate Hicks, (doc. 28, pp. 14–15), Plaintiff contends that Defendant discharged CS spray in a relatively small cafeteria space and then confined Plaintiff there until another officer, witness Johnson, let him and other inmates out through a back door, (doc. 30-2, pp. 1–2.) Under Plaintiff's version of events, the jury could find that the force Defendant applied far exceeded any need for force posed by Plaintiff.

### C. The Extent of Injury to Plaintiff

The extent of Plaintiff's injury also weighs against a grant of summary judgment. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id.

8

at 800–01 (citing Wilkins, 559 U.S. at 37).  Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.  Plaintiff's injuries are not so clearly contradictory that they discredit Plaintiff's version of the incident.

As detailed above, according to Plaintiff, he suffered immediate physical injury to his immune system, throat, lungs and chest, and began coughing up blood.  (Doc. 30-2, pp. 2–3; Doc. 25, p. 4.)  Plaintiff continues to cough up blood, has now developed an abnormality on the left side of his face, and has since been seen by medical again with respect to his injuries from that day.  (Doc. 25, pp. 4–5; Doc. 30-1, pp. 1–2; Doc. 30-2, pp. 2–3; see also Doc. 27, pp. 2–5.)  These injuries are not so insignificant that they would prevent the jury from finding for Plaintiff on the "core judicial inquiry," that being "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'"  Wilkins, 559 U.S. at 39 (alteration in original) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).[5]

### D. The Extent of the Threat to the Safety of Staff and Other Inmates

Under both parties' version of events the jury could find that Plaintiff posed little if any threat to the safety of staff and other inmates.  Defendant argues that Plaintiff was in the cafeteria while he and witnesses Johnson and Anguiano were in the hallway dealing with inmate Hicks who was allegedly being insubordinate.  (Doc. 28, pp. 14–19.)  Plaintiff does not dispute that he was in the cafeteria during the time in question.  (Doc. 30-2, p. 3.)  Defendant fails to ascribe any dangerous conduct to Plaintiff, and Plaintiff contends he was sitting quietly in the cafeteria prior to Defendant discharging CS spray in his presence, (id.).  Therefore, at least on the point of

---

[5] As the Court noted in Wilkins, while the minor injuries Plaintiff suffered do not require a finding that the force used against him was not excessive, "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover."  559 U.S. at 40.

9

whether Plaintiff posed a threat to the safety of others, there is no dispute of fact. Although the need to quell insubordinate inmates such as Hicks is, of course, a legitimate security interest, in this case, the jury could find that Plaintiff posed no threat to that interest and that the force Defendant employed was not addressed to that interest, if such even existed.

### E. Any Efforts Taken to Temper the Severity of a Forceful Response

Here the central question of this case, whether Defendant ever discharged CS spray in Plaintiff's presence in the cafeteria, produces yet another genuine dispute of material fact. Plaintiff contends he was seen by medical both immediately after the event in question and weeks later for continuing symptoms. (Doc. 25, pp. 4–5; Doc. 30-1, pp. 1–2; Doc. 30-2, pp. 2–3.) Because Defendant argues Plaintiff was never harmed by the CS spray, Defendant does not address whether Plaintiff was seen by medical with respect to the incident. (Doc. 28, pp. 15–18.) Instead, Defendant contends inmate Hicks was examined by medical after being sprayed with CS by witnesses Johnson and Anguiano. (Id.) Defendant fails to provide any documentary evidence of inmate Hicks's purported insubordination and subsequent examination in medical. Likewise, Plaintiff fails to provide the same for his alleged visits to medical, but he contends a search of prison medical records will establish that he in fact required medical attention due to the incident. (Doc. 30-1, p. 3.)

Nevertheless, because the preceding four factors weigh in Plaintiff's favor, and because a factual dispute remains as to Plaintiff's medical treatment, the Court should **DENY** Defendant summary judgment on his arguments that he did not use an excessive amount of force against Plaintiff in the cafeteria.

## II.   State Law Claims

Defendant maintains that he is entitled to summary judgment on Plaintiff's state law claims. (Doc. 28, pp. 7–9.) Defendant contends the facts show that Plaintiff has not met the respective standards for each of his state law claims. (Id.) At frivolity review, the Court found Plaintiff to have plausibly stated claims for battery, false imprisonment, and intentional infliction of emotional distress against Defendant. (Doc. 20, pp. 13–14.) While the factual disputes described in detail above also preclude summary judgment as to Plaintiff's state law claims, the Court discusses Defendant's arguments in turn.

### A.   Battery

Defendant contends no battery occurred, "even assuming for the sake of argument that [Plaintiff] had not manufactured this nonexistent encounter," because Plaintiff failed to allege Defendant committed the requisite touching. (Doc. 28, p. 7–8.) In this situation, the black-letter law is that an indirect touching, such as through Defendant's alleged use of CS spray, states a valid battery claim. See, e.g., Hendricks v. S. Bell Tel. & Tel. Co., 387 S.E.2d 593, 594 (Ga. Ct. App. 1989) ("The unlawful touching need not be direct, but may be indirect, as by the precipitation upon the body of a person of any material substance.") (citations omitted). Thus, although Plaintiff did not allege Defendant directly touched him, a reasonable jury could infer from Plaintiff's CS spray allegations that the spray discharged by Defendant in the cafeteria indirectly touched Plaintiff and caused him harm.

### B.   False Imprisonment

Plaintiff avers Defendant locked him and other inmates inside of the cafeteria after he discharged CS spray. (Doc. 30-2, p. 1.) Defendant argues that even accepting Plaintiff's facts as true he cannot state a claim for "false arrest" because Plaintiff "was not arrested." (Doc. 28, p.

11

8.) Factual disputes aside, Defendant's argument fails on its face because Plaintiff propounded a claim of false *imprisonment* not false arrest. See O.C.G.A. § 51-7-20 (defining the tort of false imprisonment as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."). Under Plaintiff's version of events, the jury could find Defendant committed the tort of false imprisonment when he improperly locked Plaintiff in a cafeteria contaminated with CS spray.

### C. Intentional Infliction of Emotional Distress

Again, Defendant contends Plaintiff's version of events, assuming they were true, does not establish the tort of intentional infliction of emotional distress, but he provides no analysis of this argument. (Doc. 28, p. 8.) Defendant further argues that he "did nothing with regard to" Plaintiff and thus did not intentionally inflict emotional distress on Plaintiff. (Id. at p. 9.) Four elements must be shown to state a claim for intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe." Fisher v. Toombs Cty. Nursing Home, 479 S.E.2d 180, 185 (Ga. Ct. App. 1996) (citations and internal alterations omitted). Defendant's argument here illustrates the disputed material facts as to this claim. The jury could reasonably find Defendant liable for intentional infliction of emotional distress based on Plaintiff's version of events, which shows a "reckless," if not "intentional," discharge of CS spray and subsequent confinement sufficient to cause "severe" emotional distress.

Given the pervasive disputes of material fact regarding Defendant's conduct and Plaintiff's injuries on the day in question, the Court should not conclude as a matter of law that

Defendant is entitled to summary judgment on Plaintiff's state law claims. Therefore, the Court should **DENY** Defendant's arguments on this front as well.[6]

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Defendant's Motion for Summary Judgment. (Doc. 28.) Therefore, Plaintiff's Eighth Amendment excessive force claim and state law claims for battery, false imprisonment, and intentional infliction of emotional distress should remain pending before the Court.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections **within fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a District Judge of this Court will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part the findings or recommendations herein. Objections not meeting the specificity requirement set out above will not be considered by a District Judge.

---

[6] Defendant also contends Plaintiff's requested injunctive relief cannot meet the legal standards applicable to prisoners seeking injunctions and is not available under either party's version of events. (Doc. 28, pp. 9–11.) In so far as Plaintiff has yet to prevail in this case and genuine disputes of material fact remain, Defendant's argument on the contours and enforceability of any probable injunctive relief is premature and does not warrant summary judgment.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of March, 2018.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA